**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRISTINE HELEN D.,[1]

          Plaintiff,

  v.

ANDREW M. SAUL,
Commissioner of Social Security,

          Defendant.

Case No. 2:18-cv-08126-AFM

**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff filed this action seeking review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

**BACKGROUND**

In July 2015, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since March 27, 2013. Plaintiff's applications were denied initially and upon reconsideration. (Administrative Record

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

["AR"] 112-121, 125-138.) A hearing took place on May 12, 2017 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 29-73.)

In a decision dated August 15, 2017, the ALJ found that Plaintiff suffered from the severe impairment of interstitial cystitis. (AR 16.) After concluding that Plaintiff's impairment did not meet or equal a listed impairment, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). (AR 17-18.) The ALJ determined that Plaintiff retained the ability to perform light work with the exception that she can only occasionally climb, balance, kneel, stoop, crouch or crawl; and requires "10 minutes of extra break time in the AM and 15 minutes of extra break time in the PM of each workday, in addition to normal breaks." (AR 17.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 22.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1.    Whether the ALJ properly evaluated the medical opinions.

2.    Whether the ALJ properly rejected Plaintiff's subjective complaints.

3.    Whether the ALJ properly determined that Plaintiff is able to perform her past relevant work.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Relevant Medical Evidence

In February 2013, Plaintiff was admitted to the emergency room of Charleston Area Medical Center, complaining of urinary urgency and frequency, "severe at times," sometimes urinating every 10 minutes. She also complained of nocturia, sleeping only 2-3 hours a night. (AR 334.) The following month, Plaintiff presented to the Women's Medicine Clinic for a follow-up. She reported vaginal bleeding and dysuria (painful urination). (AR 329-330.) Later in March 2013, Plaintiff presented herself at Harbor-UCLA Urgent Care Clinic complaining of continued frequent and painful urination. She was treated for a urinary tract infection. (AR 350.)

On January 7, 2014, Plaintiff was treated at St. Joseph's Hospital for complaints of "extreme pelvic pain and overactive bladder." Plaintiff stated that the pain had been intermittent in the last six months, but was currently constant. She also reported suffering a feeling of incontinence for over a year. She was referred to Douglas McKinney, M.D. (AR 395, 492.) Plaintiff was seen by Dr. McKinney on January 27, 2014. She reported urinary frequency of once every hour and sometimes as often as every 20 minutes, though use of Oxytrol patches "may decrease her frequency to every three hours." (AR 492.) John M. Rollins, M.D., recommended cystoscopy and instillation of potassium chloride to confirm a suspected diagnosis of interstitial cystitis ("IC"). (AR 495.) On February 3, 2014, Plaintiff reported that she felt "somewhat improved." (AR 391.)

Plaintiff underwent a cystoscopy on February 4, 2014. The test confirmed Dr. McKinney's IC diagnosis. (AR 486-490.) Dr. McKinney recommended that Plaintiff start Elmiron, amitriptyline, Prelief, and an IC diet. He noted that it could take 3 to 6 months for Elmiron to take effect. (AR 488-489.)

On a March 4, 2014 follow up, Plaintiff reported that her pelvic pain was "now much better." (AR 387.) On May 7, 2014, Plaintiff was doing "a little better," but had not improved as much as she would have liked. (AR 475.) Per Dr. McKinney's recommendation, Plaintiff underwent intravesical instillation procedures on May 7 and May 14, 2014. (AR 471-473, 475-478.)

On May 15, 2014, Plaintiff complained of increased pelvic pain and bladder problems. Dr. Rollins recommended a hysterectomy with BSO, and Plaintiff agreed. (AR 383-386.) In June 2014, however, Plaintiff reported "fairly good relief of pain" with two instillation procedures. She further reported that Oxybutynin helped her frequency and urgency. She explained that she took the medication when she was "going to be outside her home and may go up to five hours between urinations." She also said that Prelief helped her symptoms. (AR 467.)

On July 15, 2014, Plaintiff began treatment with Tawfik Zein, M.D., a urologist at St. Joseph's Hospital. At her initial appointment, Dr. Zein diagnosed Plaintiff with chronic IC. He noted Plaintiff's complaints of persistent symptoms of pelvic pain, urinary frequency, urgency, and incontinence. He also noted that after beginning Elmiron and Oxybutynin, Plaintiff's symptoms improved to less frequency "1-2 hours," but she still had a feeling of urgency. (AR 463-466.) On July 29, 2014, Plaintiff returned a "Urinary Diary." According to Plaintiff's diary, in spite of medication, Plaintiff "is going around 10 x per day." (AR 458.)

On July 30, 2014, Plaintiff underwent a hysterectomy.[2] Her post-operative diagnoses included chronic pelvic pain, uterine fibroids, urinary urgency, and

---

[2] Although not entirely clear, the record suggests that the hysterectomy was performed, at least in part, to address multiple benign uterine tumors. (*See* AR 260.)

abdominopelvic adhesions. (AR 375-377.) During an August 22, 2014 follow up, Dr. Zein noted that Plaintiff had recovered from her hysterectomy, but still suffered from urinary frequency. (AR 454.)

At her September 10, 2014 follow up, Plaintiff had no complaints. Her bowel and bladder functions were normal. (AR 368.) Treatment notes from November 2014 indicate that Plaintiff had no complaints of pain and no urinary complaints. Dr. Rollins noted that Plaintiff was "much improved with Vagifem Rx." (AR 365-367.) Likewise, notes from December 4, 2014 indicate that Plaintiff "is better now." Specifically, Plaintiff had no more nocturia and no incontinence; "her only symptom is urgency and is triggered by some words at work or by certain thoughts." (AR 427.)

On December 17, 2014, however, Plaintiff again complained of pain and underwent intravesical instillation. (AR 421-423.) On December 22, 2014, Plaintiff reported that the last intravesical instillation did not have the effects that she was expecting and she wanted to discuss the option of PTNS (transcutaneous electrical nerve stimulation). (AR 417-420.)

On January 21, 2015, Plaintiff complained of worsening IC symptoms. (AR 415.) She reported that the Vagifem, which had initially helped her symptoms, now made her symptoms worse. (AR 360.) Dr. Rollins opined that none of Plaintiff's symptoms was related to Vagifem. He noted that Plaintiff was "very anxious and stressed." Dr. Rollins's diagnostic impression was that Plaintiff suffered from both chronic IC and "mixed anxiety and depressive disorder." He indicated that Plaintiff appeared to be "trapped in a poor relationship with no way out" and recommended that Plaintiff obtain services for women in crisis. (AR 363.)

On her March 9, 2015 follow up, Plaintiff stated that she was "doing well," with "no new problems or concerns." (AR 411-412.) Treatment notes from May 2015 also state that Plaintiff "feels much better, no more as frequency and urgency as before." (AR 407.)

In July 2015, Dr. Zein noted that Plaintiff suffered from frequency and nocturia 2-3X. (AR 401.)

In August 2015, Plaintiff was seen by Susan Long, M.D., for evaluation of pelvic pain. Plaintiff reported that her pain had "gotten worse over the past several months." (AR 511.)

On September 1, 2015, Plaintiff was seen by Peter Edgerton, M.D., for a urological consultation. Plaintiff reported that she had obtained "no pain relief" (AR 527.) Dr. Edgerton assessed Plaintiff with IC. (AR 528.) He performed a cystoscopy on September 15, 2015, which revealed "questionable endometriosis." (AR 532.) In a follow-up appointment later that month, Dr. Edgerton diagnosed Plaintiff with IC and bladder endometriosis. (AR 539.)

Under the care of Dr. Zein, Plaintiff underwent a session of PTNS on December 16, 2015. On that date, Plaintiff reported that she had "not had a good week" and complained that she had suffered bladder pain for the last 48 hours. (AR 574.) On December 30, 2015, Plaintiff again reported worsening bladder pain and urinary symptoms. She underwent another thirty-minute session of PTNS. (AR 571.)

Plaintiff moved to California in January 2016 and began treatment with Athanasia Kakoyannis, D.O., at the Venice Family Clinic. (AR 611-678.) She was subsequently referred to Thomas Johnson, M.D., a urologist. Dr. Johnson examined Plaintiff in February 2016 and remarked that Plaintiff suffered from a "complex, chronic bladder pathology," and "would be better served by being treated by a 'Female Urology' Specialist." (AR 609-610.) Plaintiff saw Dr. Johnson again in June 2016. She complained of problems with urinary control or incontinence, and reported urinating "more frequently now than usual." (AR 606.) In treatment notes from September 2016, Dr. Johnson indicated that Plaintiff had tried "multiple modalities to combat OAB [overactive bladder] symptoms. Nothing has worked. She has seen various doctors for her problem, but again has not received any satisfaction." (AR 604.)

On March 17, 2017, Plaintiff underwent a complete internal medicine evaluation by Steven B. Gerber, M.D. Dr. Gerber noted that Plaintiff reported that she has "interstitial cystitis" and complained of frequent urination, which occurs as frequently as every 20 minutes. (AR 556.) Dr. Gerber reviewed no medical records. (AR 556.) Dr. Gerber rendered the following impression:

> The claimant is a 56-year-old Caucasian female with a history of urinary frequency and "Interstitial cystitis," but no documentation has been provided. Physical examination did not reveal any significant abnormalities to account for the subjective complaint.

(AR 560.)

## II. The ALJ's Consideration of the Medical Opinions

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Zein, Kakoyannis, and Gerber. For the following reasons, Plaintiff's contention lacks merit.

### A. Relevant Law

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If a treating or examining physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating or examining physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted). Because the opinions of Plaintiff's treating physicians were contradicted by the opinion of the examining physician (AR 560) and the State agency physician (AR 97-100), the ALJ was required to provide specific and legitimate reasons for rejecting them.

## B. Dr. Zein

Dr. Zein provided three separate opinions:

- A statement dated December 22, 2014, in which he wrote that Plaintiff's IC "forces her to use the bathroom frequently." (AR 359.)
- A Physical RFC Questionnaire completed on October 23, 2015 indicating that he treated Plaintiff on a weekly basis. Dr. Zein listed Plaintiff's IC symptoms as including pelvic pain, urinary frequency, urinary urgency, incontinence, nocturia with disrupted sleep, daytime drowsiness and lack of mental clarify, anxiety and depression. (AR 547-551.) Dr. Zein indicated that Plaintiff must urinate "frequently." (AR 548.) More specifically, Dr. Zein opined that Plaintiff required 8 unscheduled restroom breaks of 5-10 minutes each during an 8-hour workday, and must be permitted "ready access to a restroom." (AR 549.) According to Dr. Zein, Plaintiff was able to stand and/or walk less than 2 hours in an 8-hour day, could only stand for 20 minutes at a time, could rarely lift twenty pounds or less, rarely twist, stoop or climb stairs, and never crouch or climb ladders. (AR 549-550.) He further opined that Plaintiff's symptoms would constantly interfere with the attention and concentration needed to perform even simple work tasks; that she is incapable of even low stress jobs due to unabated pain and stress, and that she would likely miss more than four work days per month. (AR 548-550.)

- A statement dated December 8, 2015, in which he wrote that Plaintiff's IC causes her "abdominal and pelvic pain which prevents her from being able to do routine daily activities." (AR 552.)

The ALJ rejected Dr. Zein's December 22, 2014 statement that Plaintiff's IC "forces her to use the bathroom frequently," explaining that the opinion "was unaccompanied by any clinical support" and "does not provide a functional assessment or even an opinion as to how often the claimant would need to use the restroom." (AR 19, 359.)

An ALJ may properly reject a treating physician's opinion that is conclusory or unsupported by clinical findings. *Chaudhry v. Astrue,* 688 F.3d 661, 671 (9th Cir. 2012); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ reasonably found that Dr. Zein's one sentence letter was conclusory. Not only does the letter fail to include reference to clinical support, but it lacks any meaningful description of how Plaintiff's IC caused functional limitations and fails to indicate how frequently Plaintiff would need to use the restroom. Thus, the ALJ provided legally sufficient reason for rejecting this opinion. *See Rivera v. Berryhill*, 2017 WL 2233619, at *7 (C.D. Cal. May 22, 2017) (ALJ properly rejected treating physician's opinion on ground that it was "not probative or significant because it was not based on any apparent objective or clinical findings, it did not articulate with any specificity what Plaintiff could still do, and it appeared to be limited to a brief description of Plaintiff's symptoms").

Next, the ALJ also rejected Dr. Zein's October 23, 2015 functional assessment, providing several reasons for doing so. First, the ALJ explained that Dr. Zein's assessment "listed multiple subjective symptoms and extreme functional limitations, yet the only objective support was suprapubic tenderness on physical examination." (AR 20.) As set forth above, not only did Dr. Zein opine that Plaintiff requires eight unscheduled restroom breaks and that her symptoms are severe enough to interfere constantly with her attention and concentration, but he opined that she is significantly

limited in numerous other functional activities – i.e., she is unable to stand and/or walk for more than two hours in a day or more than twenty minutes at a time, and rarely able to lift less than ten pounds, climb stairs, stoop, or twist. (AR 548-550.) In support of this litany of limitations, Dr. Zein cited a single clinical finding – suprapubic tenderness on physical examination. (AR 547.) In light of the foregoing, the ALJ's conclusion that Dr. Zein's opinion lacked objective support is supported by substantial evidence. Accordingly, this was a legitimate reason for rejecting it. *See Chaudhry*, 688 F.3d at 671; *Batson*, 359 F.3d at 1195.

The Commissioner also contends that the ALJ properly relied upon the inconsistency between Dr. Zein's description of Plaintiff's pain as "unabated" and treatment notes reflecting numerous occasions on which Plaintiff's pain and symptoms had improved. (ECF No. 26 at 10-11, citing AR 19-20.) As the Commissioner points out, the ALJ cited treatment records reflecting significant periods during which Plaintiff reported suffering less pain or no pain. (*See* AR 19-20, citing AR 387 (March 2014); AR 467 (June 2014); AR 372 (August 2014); AR 368 (September 2014); AR 365-367 (November 2014); AR 427 (December 2014); AR 411 (March 2015), AR 407 (May 2015).) A contradiction between a treating physician's opinion and other substantial evidence in the record constitutes a specific and legitimate reason for rejecting the treating physician's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson*, 359 F.3d at 1195.

Plaintiff, on the other hand, argues that proper consideration of IC must take into account that its symptoms may vary in incidence, duration, and severity. (ECF No. 23 at 13, citing SSR 15-1p.) Plaintiff points to numerous treatment records indicating that while her pain and symptoms periodically improved, they also returned. While Plaintiff's characterization of the record may be accurate, it does not necessarily undermine the ALJ's conclusion that Dr. Zein's opinion that she suffered from "unabated pain" was inconsistent with at least significant portions of the record demonstrating her pain had, in fact, abated.

Moreover, even assuming the ALJ erred in relying on this inconsistency or in any other reason provided for rejecting Dr. Zein's opinion, the error is harmless because the ALJ provided at least one specific and legitimate reason for rejecting Dr. Zein's opinion. *See Green v. Berryhill*, 731 F. App'x 596, 599 (9th Cir. 2018) (where ALJ provided specific and legitimate reason to reject treating physician's opinion, any error in relying on additional reasons is harmless) (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

Last, the ALJ rejected Dr. Zein's December 8, 2015 letter which stated that Plaintiff's abdominal and pelvic pain "prevents her from performing routine daily activities" because Dr. Zein did not provide any clinical or objective evidence to support it. (AR 20-21, citing AR 552.) Dr. Zein's two-sentence letter includes no reference to any clinical or objective evidence. Thus, this was a valid reason for the ALJ to reject it. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

As Plaintiff points out, the ALJ also stated that Dr. Zein's opinion appeared to be generated with the intent of supporting Plaintiff's disability application. (ECF No. 23 at 15, citing AR 20.)[3] The ALJ likely erred in attributing an improper motive to Plaintiff's treating physicians. *See Reddick v. Chater*, 157 F.3d 715, 725-726 (9th Cir. 1998). Nevertheless, the error was harmless because the ALJ also provided legally sufficient reasons for rejecting these opinions.

## C. Dr. Kakoyannis

Dr. Kakoyannis provided a letter dated December 1, 2016, in which she stated that Plaintiff suffers from chronic IC and gastric problems "which interfere with her ability to work." Dr. Kakoyannis opined that Plaintiff was unable to sustain full-time

---

[3] The ALJ included a similar statement in assessing Dr. Kakoyannis's opinion. (AR 21.)

employment "due to the pain and discomfort from these conditions which necessitate frequent breaks and rest periods throughout the day and week." (AR 611.)

The ALJ assigned little weight to Dr. Kakoyannis's opinion, explaining that it provided no clinical support other than the diagnoses themselves, did not specify the number of breaks or their duration, and it conclusorily states the physician's opinion that Plaintiff is unable to sustain full-time employment. (AR 21.)

The ALJ properly rejected Dr. Kakoyannis's opinion on the ground that it was unsupported, vague, and offered an opinion on the ultimate conclusion that Plaintiff is disabled. *See*, *e.g., Thornsberry v. Colvin*, 552 F. App'x 691, 692 (9th Cir. 2014) ("[A] doctor's opinion that a claimant is disabled is not itself a medical opinion but an issue reserved exclusively for the Commissioner.") (citation omitted); *Durham v. Colvin*, 2015 WL 9305627, at *4 (C.D. Cal. Dec. 21, 2015) (ALJ provided specific and legitimate reason to reject physician's opinion where ALJ found opinion "vague and conclusory, and does not provide specific work-related limitations for the claimant, or objective findings upon which this opinion is based); *Brown v. Colvin*, 2015 WL 5601400, at *4 (E.D. Cal. Sept. 22, 2015) (letter from claimant's therapist "merely offered the conclusion of a disability, stating plaintiff was unable to work" and such "disability determinations ... are reserved to the Commissioner").

**D.  Dr. Gerber**

Dr. Gerber opined that Plaintiff's impairment resulted in no functional limitations, but stated that she "should be afforded ready access to restroom facilities." (AR 560.) The ALJ assigned significant weight to Dr. Gerber's opinion, concluding it was supported by Dr. Gerber's examination findings, medical records showing improvement in Plaintiff's condition, and Plaintiff's reported daily activities. (AR 21.) "Nonetheless," the ALJ explained:

> the undersigned has given the claimant's subjective complaints of urinary frequency the benefit of the doubt, such that the residual functional capacity restricts the claimant to light exertion work and

includes additional protective limitations regarding restroom use and breaks.

(AR 21.)

Plaintiff contends that the ALJ erred because he "implicitly rejected" Dr. Gerber's opinion that she be provided "ready access to the restroom" by failing to specifically include it in his RFC. (ECF No. 23 at 16.)

The ALJ's decision makes clear that the ALJ considered Dr. Gerber's opinion to be subsumed in the RFC he assessed, which provided Plaintiff with two additional breaks to accommodate her need to use the bathroom. As the Commissioner points out, Plaintiff's past work as a sedentary professional already includes a morning break, lunch break, and afternoon break. *See* SSR 96-9p (sedentary work includes morning break, afternoon break, and lunch period); *Learnaham v. Astrue*, 2010 WL 3504936, at *5 (E.D. Cal. Sept. 3, 2010) (noting "normal morning break, lunch break, and afternoon break to which workers performing sedentary work are entitled"). Consequently, the ALJ's inclusion of two additional break periods resulted in Plaintiff having two 10-minute breaks in the morning, a lunch break, and two more break periods in the afternoon, one 10-minutes and the other 15-minutes. Furthermore, these breaks are unscheduled, meaning that they contemplate providing Plaintiff access to the restroom five times throughout the day when needed to accommodate her urinary frequency.

Plaintiff fails to provide a definition of "ready access to the restroom," let alone point to any regulation or statute defining that phrase. The Court is aware of no authority defining "ready access to a restroom" as requiring something other than what the ALJ's RFC contemplates. In fact, the few cases this Court has found reveal varying interpretations of the phrase. *See*, *e.g.*, *Elzig v. Berryhill*, 2019 WL 2024953, at *5 (E.D. Cal. May 8, 2019) ("ready access to a restroom" could be accommodated by the normal morning, lunch, and afternoon breaks); *McGee v. Berryhill*, 2018 WL 1378750, at *16 (D. Mont. Mar. 19, 2018) (interpreting "ready access to a restroom"

"as immediate access without regard to any routine, scheduled breaks"); *Strawn v. Berryhill*, 2017 WL 3393403, at *2 (D. Ariz. Aug. 8, 2017) (plaintiff required "ready access to a restroom, which is defined as a workstation within a five-minute walk from a restroom"). In the absence of a legally-binding definition, it was reasonable for the ALJ to construe Dr. Gerber's opinion such that it was satisfied by five breaks during an eight-hour workday during which she could access the restroom.

## III. The ALJ's Credibility Determination

Plaintiff contends that the ALJ erred in rejecting her testimony regarding her subjective symptoms and limitations. (ECF No. 23 at 17-23.)

### A. Plaintiff's Testimony

In her Function Report, Plaintiff stated that she was disabled by chronic, debilitating pain and compromised bladder function, both of which impair her ability to concentrate. (AR 276.) Her daily activities include a short meditation, feeding and tending her cat, eating, checking e-mail, "lots of bathroom time," reading and sleep. She is able to perform her own personal care, prepare her own meals, make her bed and do laundry. (AR 277-278.) She goes outside two times a week, is able to travel alone and drive a car. She is able to shop for groceries or medicine. (AR 279.) Her hobbies include reading, playing solitaire, and doing crossword puzzles. However, Plaintiff stated that she tires easily and the length of time she can read is limited. (AR 280.) She found it difficult to focus beyond the pain caused by her impairment and when asked how long she was able to pay attention, Plaintiff responded, "I don't know." (AR 281.) Plaintiff indicated she had last worked in 2015, but stopped because the job was temporary. (AR 255.)[4]

At the hearing, Plaintiff testified that she experienced chronic pain and urinary frequency. She explained that she did experience some improvement in her symptoms after beginning medication, but that those medications stopped working in 2015. Even though the medications were no longer effective in relieving her

---

[4] The SSA recommended that this job be considered an unsuccessful work attempt. (AR 264-265.)

urinary symptoms, Plaintiff continued to take them because she feared that her condition could regress and get worse. (AR 41-42.) Plaintiff further testified that she had good and bad days. On a good day, she was able to go to the grocery store or the pharmacy, but there were many days when she could not leave the house. On such days, her symptoms are almost constant and she uses the restroom up to 17 times a day. (AR 47, 60.)

When the ALJ noted that Plaintiff had worked from January through May of 2015, Plaintiff explained that she had experienced improvement in her urinary symptoms and took a project job at a university in West Virginia doing chemical inventory. While working, however, her urinary symptoms increased such that she ended up missing work about once a week. (AR 44, 58-59.) Although other projects may have been available through the university, Plaintiff did not apply for them because she suffered urinary frequency (needing to use the restroom every 10 to 20 minutes), severe incontinence, and pain. (AR 59.)

Plaintiff had experienced significant weight loss – from approximately 110 pounds to 88 pounds as of the date of the hearing – which she attributed to IC, although her doctors had not provided an official diagnosis for the weight loss. (AR 41-42, 61.) At the time of the hearing, Plaintiff had been referred to a female urology specialist, but was awaiting approval from her insurance company. (AR 61-63.)

In order to be able to attend an appointment such as the hearing before the ALJ, Plaintiff would "dehydrate" herself – that is, stop all liquids the night before the appointment. (AR 59.) According to Plaintiff, her ability to work was due not only to her urinary frequency and incontinence, but also to the fatigue and pain associated with IC. The fatigue and pain caused difficulty concentrating for longer than about 10 minutes. (AR 67-68.)

After the ALJ inquired about her mental health, Plaintiff revealed that she had been psychiatrically hospitalized in 2011 on a 72-hour psychiatric hold and again overnight in 2013. (AR 54-56.) Plaintiff noted that she'd been in an abusive

relationship with a roommate and also with her mother. She was currently living with her mother at her mother's senior facility. (AR 43, 52.) Nevertheless, Plaintiff was adamant that her inability to work was due solely to chronic IC and not mental illness. (AR 40.) Thus, she declined the ALJ's suggestion that she participate in a mental health examination. (AR 56-57.)

## B.  Relevant Law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo*, 871 F.3d at 678 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1014-1015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim*, 763 F.3d at 1163; *Molina*, 674 F.3d at 1112.

## C.  Analysis

The Commissioner argues that the ALJ's credibility determination is supported by the following legally sufficient grounds: Plaintiff's subjective complaints were (1) not supported by the objective medical record; (2) inconsistent

with the medical evidence showing that she experienced consistent improvement with treatment; (3) inconsistent with her ability to work for about six months at substantial gainful activity levels in 2015; and (4) inconsistent with her daily activities. (ECF No. 26 at 13-16.)

1. Objective Evidence

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see Batson*, 359 F.3d at 1197 (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination).

Here, the ALJ summarized Plaintiff's subjective complaints, including her allegations of urinary frequency and pain, as well as her claim that pain and fatigue made it difficult for her to concentrate. The ALJ also summarizing the medical record before concluding that although Plaintiff's IC resulted in some functional limitations, the objective evidence did not support the severity of Plaintiff's allegations. (AR 18-20.)

As set forth in detail above, the objective medical evidence essentially reveals a diagnosis of IC with a history of urinary frequency and bladder problems. In light of the record, the ALJ properly relied upon the absence of objective medical support as one factor in his decision to discount Plaintiff's subjective complaints to the extent they exceeded the limitations incorporated in the RFC.

2. Evidence showing "consistent improvement with treatment"

The Commissioner argues that the ALJ properly discounted Plaintiff's credibility based upon evidence showing that Plaintiff experienced "consistent improvement with treatment." (ECF No. 26 at 14-15, citing AR 18-19.) Generally, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Tommasetti*, 533 F.3d at

1039-1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Accordingly, substantial evidence of effective treatment may provide a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018).

Contrary to the Commissioner's argument, however, the ALJ's decision does not include a finding that Plaintiff experienced "consistent improvement with treatment" nor does it include a clear indication that the ALJ relied upon such a conclusion. Furthermore, to the extent the ALJ's decision could be construed as reaching such a conclusion, it is not clear that such a finding is supported by substantial evidence.

The Commissioner points out that the ALJ identified numerous medical records reflecting that Plaintiff experienced improvement in her symptoms. (ECF No. 26 at 14-15.) Specifically, the ALJ noted the following treatment notes in which Plaintiff reported feeling either "much better," "improved," or which showed no complaints: March 2014 (AR 387); June 2014 (AR 467); August 2014 (AR 372); September 2014 (AR 368); November 2014 (AR 365-367); December 2014 (AR 427); March 2015 (AR 411) and May 2015 (AR 407). (*See* AR 19-20.) At the same time, however, the record contains treatment notes reflecting that Plaintiff's pain and symptoms had returned and/or increased including the following: two dates in December 2014 (AR 417-422); January 2015 (AR 415); August 2015 (AR 511); September 2015 (AR 532); and December 2015 (AR 571.)

The Commissioner selectively discusses those records showing improvement while ignoring records – sometimes from the very same month – indicating that Plaintiff's symptoms had returned or become worse. For example, the ALJ relied upon a treatment note dated December 4, 2014 revealing that Plaintiff was "better" due to intravesical treatment and medication, she denied nocturia and incontinence, and her "only issue was urgency triggered by words at work or certain thoughts." (AR 19, citing AR 425-427.) Both the ALJ and the Commissioner fail to mention

treatment notes dated December 17 and December 22, 2014 which revealed that Plaintiff returned with increased IC pain, underwent another intravesical instillation, and after the procedure did not relieve her pain, discussed the option of a different treatment (PTNS). (AR 417-422.)

Thus, any conclusion that Plaintiff's pain and symptoms had been effectively treated is based upon a selective and incomplete consideration of the medical record as a whole, and would not be supported by substantial evidence. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's adverse credibility determination because ALJ did not account for record "as a whole," but rather relied on "cherry-picked" evidence); *Oestman v. Colvin*, 2017 WL 10719697, at *2 (C.D. Cal. Mar. 15, 2017) (reversing credibility determination where ALJ "cited to isolated pieces of evidence as support for his conclusions, without giving any indication that he had considered the medical record as a whole"); *Vega v. Colvin*, 2015 WL 2166596, at *4 (C.D. Cal. May 8, 2015) (reversing credibility determination where ALJ selectively cited records undermining claimant's allegations of persistent diarrhea and frequent bathroom use but ignored records consistent with claimant's allegations, stating that an "ALJ may not make an adverse credibility determination by cherry-picking from the record").

### 3. Ability to perform work in 2015

The ALJ found it significant that Plaintiff was able to work for approximately six months at substantial gainful activity levels. (AR 20.) As set forth above, Plaintiff was employed performing a temporary chemical inventory project for a university. She performed full-time work from January through May 2015, when the job ended. An ALJ may properly discount a claimant's credibility based upon his or her work record. *See* 20 C.F.R. § 404.1529(c)(3); *Bray*, 554 F.3d at 1227 (affirming ALJ's credibility determination which was based in part on fact that claimant had recently worked as a caregiver and also sought other work).

Plaintiff points to her testimony that her condition deteriorated while she was working, that she had to miss work at least twice a month and as much a once a

week, and that she did not apply for another project once the first one ended because of her IC symptoms. (ECF No. 23 at 22-23, citing AR 58-59.) Based upon this testimony, Plaintiff argues that the ALJ's conclusion was "not justified." Plaintiff's argument is unpersuasive. Notwithstanding Plaintiff's assertion, the ALJ's interpretation of the record was both reasonable and supported by substantial evidence. Although the ALJ may have drawn other inferences based upon the evidence, it was not improper for the ALJ to discount Plaintiff's credibility in light of the evidence that she was able to complete the terms of her employment during a time when she was allegedly disabled. *See Orn*, 495 F.3d at 630 (where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld).

### 4. Daily activities

Last, the Commissioner points out that the ALJ's credibility determination was based, in part, upon Plaintiff's daily activities.

An ALJ may discredit testimony when a claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1113. In addition, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Nevertheless, the Ninth Circuit has made clear that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 995. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Furthermore, an ALJ should explain "*which* daily

activities conflicted with *which* part of [a] Claimant's testimony." *See Burrell*, 775 F.3d at 1138.

Here, the ALJ observed that Plaintiff was able to cook, "perform chores," walk, shop, perform self-care, and go out alone. He noted that Plaintiff's day consists of meditating, checking emails, reading, and caring for a cat, and that she was able to watch movies, play solitaire, and do crossword puzzles. (AR 22.) Neither the ALJ nor the Commissioner suggest that these activities involve skills that would translate to the workplace or indicate an ability to perform sustained activity in a work setting for eight hours a day, five days a week. *See Benjamin v. Colvin*, 2014 WL 4437288, at \*4 (C.D. Cal. Sept. 9, 2014). Furthermore, in relying on these daily activities to discount Plaintiff's credibility, the ALJ did not explain how any specific activity was inconsistent with Plaintiff's allegations that on most days, she needs to use the bathroom every 20 minutes or that she has difficulty concentrating due to pain, urinary urgency and/or fatigue. The ALJ's mere recitation of Plaintiff's daily activities in their entirety, without any explanation of which activity he considered to be inconsistent with which of Plaintiff's alleged symptom or limitation is insufficient to meet the Ninth Circuit's "requirements of specificity." *See Burrell*, 775 F.3d at 1138 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003); *see also Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.") (citation omitted); *Christine G. v. Andrew M. Saul*, 2019 WL 4038217, at \*10-11 (C.D. Cal. Aug. 27, 2019) (ALJ improperly relied upon daily activities to discredit claimant's testimony where record showed claimant's participation in those activities was limited – i.e., claimant "shops, but only goes twice a month for an hour; she reads, but not for too long…she spends time with her grandson, but that consists of reading and watching cartoons").

Although the ALJ's lack of specificity renders reliance upon Plaintiff's daily activities improper, the error is harmless in light of the other sufficiently clear and convincing reasons supporting the ALJ's credibility determination. *See Bray*, 554 F.3d at 1227 (where the ALJ presented four other independent proper bases for discounting the plaintiff's testimony, reliance on claimant's continued smoking to discredit her, even if erroneous, amounted to harmless error); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (ALJ's error in relying on claimant's receipt of unemployment benefits and on relatively conservative pain treatment regime was harmless where ALJ provided other specific and legitimate reasons for finding claimant's testimony incredible).

## IV. The ALJ's Determination That Plaintiff Could Perform Her Past Relevant Work

Plaintiff contends that the ALJ erred by concluding that she could perform her past relevant work. According to Plaintiff, the ALJ's hypothetical was flawed because it did not incorporate all of the limitations testified to by Plaintiff and assessed by treating and examining physicians. (ECF No. 23 at 23-24.) This claim is premised upon Plaintiff's underlying contentions challenging the ALJ's RFC on the ground he improperly rejected medical opinions and discounted Plaintiff's subjective complaints. Because the Court already has rejected these contentions, this separate claim presents nothing further to discuss.

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 10/3/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE